IN THE UNITED STATES DISTRICT COURT
WESTERN OF DISTRICT OF NEW YORK

-----------------------------------------------------------

LINZA EILEEN FORD, and T.S., minor child.　　　ORIGINAL COMPLAINT
　Plaintiffs,　　　　　　　　　　　　　　　　　　　JURY DEMAND

v.　　　　　　　　　　　　　　　　　　　　　　　CIVIL ACTION # 24-CV-6136-EAW

CHEMUNG VALLEY MONTESSORI SCHOOL
23 Winters Road, Elmira NY 14903.

Defendant.



-----------------------------------------------------------

The plaintiff respectfully files this complaint as follows:

## STATEMENT OF CLAIM

1. Plaintiff, on behalf of her minor son, brings this action to enforce Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181-89, as amended, and the implementing regulation, 28 C.F.R. § 36. 302, against Defendant Chemung Valley Montessori School ("Defendant" or "the School"). Defendant terminated T.S. from school on or about November 4, 2023, solely because of his disability and the refusal of Defendant to provide him with reasonable accommodation and modifications. Defendant has violated the ADA by 1) failing to make reasonable modifications to policies, practices, or procedures for a child, T.S., who has a sensory processing disability; 2) disenrolling T.S. from the School due to his disability; and 3) excluding or otherwise denying equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to T.S.'s parents because of the known disability of T.S.

## JURISDICTION

2. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345. The Court may grant declaratory relief and proper relief under 28 U.S.C. §§ 2201 and 2202.

1

3. The plaintiff also seeks injunctive relief according to 42 U.S.C 12188 (a)(1) and 42 U.S.C. § 2000a-3. The Defendant is depriving T.S. of the opportunity to get a head start on his education and learn and play with other children his age which is crucial to his continued developmental progress, and because it is impossible to find an alternative Montessori placement before the 2023-2024 school year and because T.S. will not start kindergarten until 2026.

## VENUE

4. Venue is proper in the Western District of New York under 28 U.S.C. § 1391(b)(1) because Defendant resides in this district. The venue is further proper in the Western District of New York under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

5. Plaintiff Linza Eileen Ford is T.S.'s parent and natural mother of T.S. who turned three years old in October 2023. The plaintiff and the minor child reside at 252 W First Street, Corning New York, 14830. T.S. is a qualified individual with a disability, as the term is defined under Title III of the ADA 42 U.S.C. 13121(2). The plaintiff is the parent of T.S.; therefore, she is also protected under Title III. 42 U.S.C. § 12182(b)(1)(E); 28 C.F.R. § 36.205.

## DEFENDANT

6. The defendant, Chemung Valley Montessori School, is a nonreligious private school open to the public. It is located at 23 Winters Road, Elmira NY 14903. The Defendant is a private school providing education to pre-kindergarten through eighth-grade children. It is, therefore, a place of public accommodation covered by Title III of the ADA. 42 U.S.C. § 12181(7).

## FACTS

7. The school's webpage, under frequently asked questions, includes an admission policy regarding children with disability. The policy provides in relevant part: "As we don't receive any local, state or federal aid, we do not have the necessary staff or facilities to cater to the needs of children with serious challenges. However, we carefully evaluate each applicant's circumstances on a case-by-case basis. If we believe we can provide the necessary support for a student to thrive, we offer placement..."

8. T.S. enrolled as a student at the defendant's school in the fall of 2023. Shortly before he attended Montessori school, T.S. was diagnosed with sensory processing disorder. This neurological disorder substantially limits one or more major life activities, including but not limited to, abnormal sensory response, resistance or reactivity to environment changes or changes in routine, situational awareness, emotional regulation, and participation in daily life. T.S. is an individual with a disability within the meaning of 42 U.S.C. § 12102.

9. On August 8, 2023, the plaintiff explicitly communicated to Kailea Reed, the Admission Director that T.S. had been diagnosed with Sensory Processing Disorder and was undergoing weekly occupational therapy at Leaps and Bounds Therapy.

10. Additionally, the school was informed of T.S.'s disability by Eileen Gehl via internal email on August 23, 2023. The internal email was addressed to Tim Daniel, Head of the School, and Ashley Durfee, Academic Support Coordinator.

11. The internal email contained the occupational therapist's notes about T. S.'s fixation with food, trouble napping, behavioral challenges, and tendency to climb on things.

12. The email concluded by indicating that a subsequent discussion would take place within two to three weeks to determine if any measures were required, and that a timeline for the plan would be given.

13. Defendant accepted T.S. for full-day participation in its Early Childhood Education program for the contractual period of September 2023 to June 2024.

3

14. Plaintiff paid approximately $5,427.95 in tuition for T.S.'s enrollment from September 2023 to January 2024.

15. T.S.'s first day at the school was September 8, 2023.

16. On or around September 26, 2023, an incident involving T.S. related to his disability occurred. Specifically, T.S. was repeatedly told to put away his lunch; however, he declined to comply.

17. Subsequently, T.S. experienced an emotional outburst. The teacher's assistant, Kim Rall reportedly physically removed T.S. from the classroom and turned him over to Ashly Durfee at which point he immediately calmed down. Mrs. Rall also reported that T.S. pinched her arm.

18. Unlike Ashly Durfee, who is certified as a Crisis Intervention Trainer and has a background in Special Education, T.S.'s teachers Kim Rall, and Eileen Gehl, are not trained in Therapeutic Crisis Interventions or Special Education, according to their online profiles.

19. If T.S. had a behavior issue in the classroom, the interim practice was to remove T.S. from his classroom and bring him to Ashly Durfee's office where she would effectively de-escalate the situation and then return him to the classroom within "five minutes."

20. On or around October 4, 2023, the plaintiff attended a meeting with Ashley Durfee and Eileen Gehl to discuss potential interventions and establish a timeline for implementation.

21. During that same conversation the plaintiff referenced the therapist's notes and explained the modifications T.S. requires to be successful in Montessori requiring primarily that the person or persons supervising him become informed about sensory deficits and how to relate to T.S. See, para. 26 & 27.

22. The plaintiff suggested, inconspicuously storing T.S.'s lunch pail, distributing his food in snack-size bags, allowing sensory breaks, and allowing T.S. to lie down with a toy instead of taking a nap, and when climbing on things to re-direct his attention. The plaintiff also offered to provide for an occupational counselor, if needed.

23. During the same conversation, Defendant had stated that there were modifications available for T.S. In a document titled "Strategies" Ashly Durfee plainly described potential reasonable accommodations that would enable T.S. to meet all the essential requirements of the School. The plaintiff has attached a true copy of the document as **Exhibit 1.**

24. Worth mentioning, on or about Oct 6, 2023, Plaintiff informed Ashly Durfee that Corning-Painted Post School's psychologist also diagnosed T. S. with sensory processing disorder and classified him as a pre-student needing service.

25. Yet, as of October 10, 2023, none of the necessary support and/or the Simplified Functional Behavior Assessment specified in **Exhibit 1** had been carried out.

26. On or about October 10, 2023, Ashly Durfee emailed the plaintiff to report that T.S. was struggling with nap times and had an emotional flare-up, according to T.S.'s teacher.

27. Ashly Durfee further informed the plaintiff that she coached Eileen Gehl to give T.S. choices instead of directives, such as letting him decide where to lie down or what activity to do, like playing quietly with a toy.

28. Because Defendant was not willing to become informed about his disability and was not willing to provide any support including the ones suggested by the plaintiff or even conduct the simplified functional behavioral assessment, as outlined in **Exhibit 1**, T.S.'s sensory concerns became aggravated, like those behaviors mentioned in several incidents reports, he was ultimately forced out of the program on November 4, 2023.

29. In an email dated December 18, 2023, the plaintiff was informed that Ashly Durfee had resigned.

30. T. S. is currently deterred from re-enrolling at Montessori school. The defendant has totally excluded T.S. from the Early Start Program because of his disability and because the defendant refused to provide reasonable accommodations to which T.S. was legally entitled. Yet, T.S. plans to re-apply as a student once the Montessori School provides T.S. with reasonable accommodations needed to be successful.

31. The defendant did not conduct an appropriate individualized assessment of T.S.'s needs, ensuring that the school eligibility criteria did not screen out or tend to screen out students with disabilities.

32. The defendant did not discuss with the plaintiff and/or provide in writing to the Plaintiff the reasons why the school determined that the accommodation(s) or modification(s) were not reasonable, not necessary, whether the School could implement alternative accommodations or modifications and/or constituted a fundamental alteration of the nature of the service, program, or activity or would result in an undue burden. See, 42 U.S.C. 12182(b)(2)(A)(iii); see also 28 C.F.R. 36.303.

33. Because of their association with T.S., T.S.'s parents were denied a full and equal opportunity to participate in or benefit from the school's goods, services, facilities, privileges, advantages, or accommodations.

34. Because of their association with T.S., T.S.'s parents were denied the ability to contract for, purchase, and utilize needed education services offered and marketed by the School to parents and readily available to parents of other children without disabilities that manifested as did T.S..

## CAUSE OF ACTION

### Title III of the Americans with Disabilities Act.

The allegations of Paragraphs 1 through 34 are hereby re-alleged and incorporated by reference as if fully stated herein. The School discriminated based on disability in the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations in violation of Title III of the ADA, 42 U.S.C. § 12182(a) and the Title III implementing regulation at 28 C.F.R. Part 36,

by:

A. failing to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, in violation of 42 U.S.C. § 12182(b)(2)(A)(ii) and its implementing regulation at 28 C.F.R. § 36.302;

B. terminating T.S., based on disability, from the School, which constitutes a denial of the opportunity of T.S. to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity in violation of 42 U.S.C. § 12182(b)(1)(A)(i) and 28 C.F.R. § 36.202;

C. excluding or otherwise denying equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to T.S.'s parents because of the known disability of their son, T.S., in violation of 42 U.S.C. § 12182(b)(1)(E) and 28 C.F.R. § 36.205.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff prays that the Court:

A. Grant judgment in favor of Plaintiff and declare that Defendant violated Title III of the ADA, 42 U.S.C. §§ 12181-89, and its implementing regulation, 28 C.F.R. Part 36.

B. Enjoin Defendant, its officers, agents, employees, and all others in concert or participation with it, from engaging in discrimination against individuals with disabilities, and specifically from failing to comply with Title III of the ADA, 42 U.S.C. §§ 12181-89, and its implementing regulation, 28 C.F.R. Part 36; See 42 U.S.C. 12188(a)(1) (incorporating into Title III the remedies of 42 U.S.C. 2000a-3(a).

C. Order Defendant to take such affirmative steps as may be necessary to restore T.S., as nearly as practicable, to the position that he would have been in but for Defendant's discriminatory conduct and to provide the appropriate assessment and modifications he requires to participate successfully in the school program. 42 U.S.C 12188 (a)(1) and 42 U.S.C. § 2000a-3;

D. Order Defendant to comply with the requirements of Title III of the ADA, 42 U.S.C. § 12181-89, and its implementing regulation, 28 C.F.R. Part 36;

E. Order such other appropriate relief as the interests of justice may require including assignment of counsel 42 U.S.C 12188 (a)(1) and 42 U.S.C. § 2000a-3.

Under 28 U. S. C. section 1746(2) I, LINZA EILEEN FORD, declare under the penalty of perjury that the preceding is true and correct. Execute on the 29th day of February 2024.

*Linza Eileen F*

Linza Eileen Ford, Pro-Se
252 W First Street
New York, 14830
(917) 574-6713

8

**Strategies**

1. Simplified Functional Behavior Assessment (FBA): Conduct an assessment to identify triggers and antecedents for Theo's behaviors. This will provide insights into what specific situations or demands lead to these behaviors.

2. Positive Behavior Support Plan (PBSP): Develop a PBSP based on the FBA findings. Tailor interventions to address the student's unique needs and triggers.

3. Visual Schedules: Create visual schedules and cues to help Theo understand and anticipate transitions and activities, reducing anxiety and resistance to change.

4. Communication Skills: Implement communication strategies such as teaching the Theo to use simple words, signs, or pictures to express his needs and emotions instead of resorting to yelling.

5. Social Stories: Use social stories and role-playing to teach appropriate behaviors and emotional regulation, especially focusing on handling frustration and anger.

6. Structured Environment: Create a structured and predictable classroom environment to minimize anxiety and increase Theo's sense of security.

7. Parent-Teacher Collaboration: Involve Theo's parents in the intervention plan to ensure consistency and alignment between home and school strategies.

8. Crisis Prevention: Develop a crisis prevention plan that includes strategies for de-escalating situations when Theo becomes aggressive or attempts to elope.

9. Professional Support: Consider involving a behavior specialist or therapist who can provide ongoing support and guidance in implementing the behavior intervention plan effectively.



PLAINTIFF'S EXHIBIT 1